375 So.2d 1041 (1979)
Irene SMITH
v.
Dennis I. SMITH, Hugh C. Morton, d/b/a Brookway Plaza Shopping Center.
No. 51353.
Supreme Court of Mississippi.
October 10, 1979.
*1042 Chill, Chill & Dove, Bernard W.N. Chill, Sr., Bernard W.N. Chill, Jr., Jackson, for appellant.
Wise, Carter, Child, Steen & Caraway, Margaret A. Hegman, Richard D. Gamblin, Jackson, for appellee.
Before SUGG, WALKER and COFER, JJ.
COFER, Justice, for the Court:
Mrs. Irene Smith has appealed from the action of the Circuit Court of Lincoln County in sustaining a plea in bar in favor of appellees Dennis I. Smith and Hugh C. Morton, under circumstances presently to be noticed.
Appellees, as lessors, had entered into a lease agreement with appellant's assignors for commercial occupancy of certain property in a shopping center, the lease to be for five years and with an option by the lessees-assignees to renew the lease for another five years. The lease contained a restriction on its assignment, regardless of which the original lessees assigned their rights to appellant. (Questions as to the effect of this undertaken assignment and appellant's status thereunder are among the issues to be resolved if the case is reached on the declaration and answer).
At a time after the assignment, the roof of the building began to leak, and appellant notified appellees thereof and requested that the roof be repaired, and their failure to do so resulted in substantial damages to merchandise she had for retail sale in the store. She claimed $15,248.02 in damages to her merchandise, $500 for damages to other property in the store, and $1,000 as cost of her removal from the premises on orders of the appellees before the end of the contract term, these orders resulting from her persistent requests that the roof be repaired. These three items of damages, aggregating $16,724.02, were the extent of the recovery she sought.
The lease agreement contains these two material clauses:
Lessors shall maintain and keep in a tenantable condition the roofing and foundation of the building located on the hereinabove described premises and the exterior walls. All other maintenance, repairs or remodeling, of any kind or character shall be made by Lessees at their own expense; however, no such repairs, alterations, or remodeling shall be made without prior written permission of Lessors. It is further agreed that Lessees shall assume the responsibility of complete interior maintenance of said building.
and
It is agreed that Lessors shall not be liable or responsible in any way for any damages to persons or property sustained in or about the demised premises during the term of this lease or any renewal thereof regardless of how same may be caused, and Lessees at all times, agree to indemnify and save harmless Lessors from all losses, damages, liabilities and expenses for any damage to person or property sustained in or about said demised premises during the term of this lease or any renewal thereof.
Lessors incorporated in their amended answer a special plea in bar setting up the waiver of damages clause as a complete defense to appellant's declaration. The matter in this plea, being "clearly distinct and readily separable" and going to the entire cause of action [Mississippi Code Annotated, section 11-7-59 (1972)], was heard in advance and was sustained by the court.
The court took note of the fact that exculpatory clauses such as here under consideration are not violative of public policy in this state, and that the clause is not an unreasonable exercise of lessors' right to contract a limitation on the extent of their damages.
The exculpatory and indemnity provision of the lease was but a division of the risk involved, fully understandable and advisable when the landlord reserves no control over the type and value of the inventory of the tenant. Not only was this clause the lessors' contract, but it was also the contract of the lessees (and of appellant, their successor).
*1043 This contract is unaffected by any public interest. There is no evidence of unequal bargaining power or of any overreaching by the lessors-appellees. There exists no problem as to the validity of the clause. Swisscraft Novelty Co., Inc. v. Alad Realty Corp., 113 N.J. Super. 416, 274 A.2d 59 (1971).
It appears from the record that, over the period from the beginning of the leak until she was ordered to remove her property from the building, appellant took no steps to remedy the defective condition of the roof, other than by protests to appellees, and suffered her property and inventory to be exposed to the water from the roof.
The lower court pointed out, and we agree, that appellant could have sought specific performance of appellees' contract. We also consider that there may have been other direct damages, such as diminution in rental value, but are of the view that the exculpatory clause of the contract was properly held a bar to appellant's recovery of the damages prayed.
We are of the opinion that the lower court decided the case correctly, and should be affirmed.
AFFIRMED.
SMITH, P.J., and WALKER, BROOM and LEE, JJ., concur.
SUGG, J., ROBERTSON, P.J., and BOWLING, J., dissent.
PATTERSON, C.J., took no part.
SUGG, Justice, dissenting:
This is the first case where we have considered a lease contract which contains an express covenant by a landlord to maintain the demised premises in a tenantable condition and an exculpatory clause exonerating the landlord from all damages to property sustained in or about the demised premises during the term of the lease.
This lease contract contains clauses which conflict. The landlord, by express covenant, agreed to keep the roof in a tenantable condition which obligated the landlord to repair leaks in the roof. On the other hand, the tenant agreed to save harmless and to indemnify the landlord from all losses, damages, liabilities and expenses for any damage to persons or property sustained in or about the demised premises.
In construing the lease contract, we must follow the rules of construction of contracts established by our decisions. Two well established rules for construing contracts are: (1) All provisions of a contract must, if possible, be given effect.[1] (2) A contract must be given a fair and reasonable interpretation.[2]
When the landlord agreed to keep the roof in a tenantable condition, the landlord then obligated himself to more than would have been required if the express covenant had not been contained in the lease contract. It is well established that a lease of private premises does not obligate a landlord to repair the premises, but a tenant takes the premises as he finds them, and in the absence of concealment or fraud of some defect or danger known to the landlord and unknown to the tenant, the rule of caveat emptor applies. Hiller v. Wiley, Miss., 5 So.2d 489, Sugg. of Error Sustained 192 Miss. 288, 6 So.2d 317 (1942); McDonald v. Wilmut Gas & Oil Co., 180 Miss. 350, 176 So. 395 (1937).
In my opinion, the contract should be construed to give effect to both the covenant by the landlord to repair and the covenant by the tenant to save the landlord harmless from damages. This can be accomplished by construing the exculpatory clause to save the landlord harmless from liability for damages, from whatever cause, except damages caused by failure of the landlord to perform his express covenant to keep the roof in a tenantable condition.
If we hold that the express covenant of the landlord to keep the roof in a tenantable *1044 condition will not support this action, we would thereby wholly ignore this covenant. Certainly it was not intended by the parties for the covenant to keep the roof in a tenantable condition to be a wholly meaningless, useless appendix to the lease contract, to be disregarded if the landlord failed to perform.
There are two lines of authority on the question involved. The majority adopts and follows the reasoning set forth in the New Jersey case cited in the majority opinion which expresses clearly the rationale of the decision.
A contrary view is taken by other courts as shown by the decisions in the cases of Gilson v. Gillia, 45 Tenn. App. 193, 321 S.W.2d 855 (1958), cert. denied by Supreme Court September 1, 1958, and Kelley Realty Co. v. Botsford, 201 Ala. 506, 78 So. 860 (Ala. 1918).
In Gilson, supra, the Tennessee Court held that the landlord was liable for damages caused by water leaking through the roof of the demised premises where the landlord agreed to put the building in tenantable condition even though the lease contained an exculpatory clause. In Kelley Realty Co., supra, the Alabama Court held that a covenant by a landlord to repair and stop leaks will support an action by the tenant for damages for failure to stop leaks, notwithstanding a covenant in the contract exempting the landlord from liability. The court held that it was necessary to construe the lease as a whole and the agreement of the landlord would support the action. The Court stated:
This covenant sued upon is the last covenant in the lease, and forms a separate and distinct clause thereof. To hold that this clause would not support this action would be to wholly ignore it, and certainly it was not intended by the parties to be a wholly meaningless, useless appendix to the lease contract, to be cut off, should it ever cause trouble. (78 So. at 861).
The lease contract involved in our case is similar to the contracts involved in the Tennessee and Alabama cases. These cases gave effect to all the provisions of the contracts, and gave a fair and reasonable construction to the contracts. They express a fairer and more reasonable construction of the lease contracts than the New Jersey case followed by the majority.
The declaration in this case charged that plaintiff repeatedly requested immediate repair to the roof and repeatedly received assurances from the landlord that all necessary repairs would be made, but the repairs were not forthcoming by the landlord. In my opinion, the declaration stated a cause of action; therefore, I would reverse and remand for a trial on the merits.
ROBERTSON, P.J., and BOWLING, J., join this dissent.
NOTES
[1] Yazoo & M.V. RR. Co. v. First National Bank of Vicksburg, 119 Miss. 59, 80 So. 382 (1918); Harris v. Townsend, 101 Miss. 590, 58 So. 529 (1912).
[2] Grandberry v. Mortgage Bond & Trust Co., 159 Miss. 460, 132 So. 334 (1931); Citizens' Bank v. Frazier, 157 Miss. 298, 137 So. 716 (1930).