644 So.2d 429 (1994)
YAZOO PROPERTIES, an Ohio General Partnership
v.
KATZ & BESTHOFF NUMBER 284, INC.
No. 92-CA-00160.
Supreme Court of Mississippi.
October 13, 1994.
Dana E. Kelly, Phelps Dunbar, W. Robert Jones, III, Jackson, for appellant.
W. Whitaker Rayner, Robert H. Weaver, Watkins Ludlam & Stennis, Jackson, for appellee.
Before HAWKINS, C.J., and PITTMAN and BANKS, JJ.
PITTMAN, Justice, for the Court:

STATEMENT OF THE CASE
This civil action is on appeal to this Court after the lower court granted summary judgment in favor of Katz & Besthoff # 284, Inc.[1] ("K & B") on January 15, 1992.
On May 18, 1989, Yazoo Properties, the lessor, filed an action to recover from K & B, the lessee, past-due rent payments. K & B responded by filing its Answer alleging that K & B was not in arrears on payment because K & B was paying the proper amount according to the lease. Both parties filed motions for summary judgment. The trial court granted K & B's Cross-motion for Summary Judgment. It is from the Order granting summary judgment that this appeal is taken. Aggrieved by the Order, Yazoo Properties appealed and assigned the following as error.
*430 THE CIRCUIT COURT ERRED IN GRANTING DEFENDANT K & B'S MOTION FOR SUMMARY JUDGMENT BASED UPON ITS FINDINGS THAT SUBSEQUENT TO CONDEMNATION OF A PORTION OF THE PREMISES LEASED BY DEFENDANTS, DEFENDANTS WERE ENTITLED TO RESORT TO CERTAIN REMEDIES FOUND IN THE LEASE OTHER THAN THOSE SPECIFICALLY SET OUT IN THE PORTION OF THE LEASE DEALING SPECIFICALLY WITH EMINENT DOMAIN.
Upon de novo review of the record, we affirm the grant of summary judgment in favor of K & B Mississippi Corporation.

STATEMENT OF FACTS
The facts of this case are basically undisputed. Appellant, Yazoo Properties, the lessor, is a general partnership organized under the laws of the State of Ohio. Yazoo Properties owns certain real property and retail facilities located in Yazoo City, Mississippi, and generally known as the Yazooville Shopping Center (the "Premises"). In early April 1977, Katz & Besthoff # 284, Inc., which later changed to K & B Mississippi Corporation, executed a lease of a portion of the shopping center (the "Lease"). Yazoo Properties subsequently acquired from the original lessor all of its right, title and interest in and to said property and was assigned said lease and was fully authorized and able to act as Lessor of the Premises.
Under the terms of the Lease, the Lessor agreed to provide the tenant with customer parking as detailed in the following provisions:
Article 16(a) of the Lease states:
It is further understood and agreed that the Lessor, at its sole expense, shall construct and keep in good repair a hard-surfaced parking area as provided in the original plot plan, which is attached hereto and marked Exhibit "A." Lessor agrees that the parking area shall at all times during the primary term of this lease or any renewal or extension thereof remain as shown on Exhibit "A." Lessor covenants and agrees that the parking area shall at all times have vehicular entrances and exits from and to adjacent streets and roads as indicated on said Exhibit "A."
Exhibit "A-1," which was made part of the lease by Amendment # 1, dated May 17, 1978, provided for a parking ratio of 5.46 spaces per 1,000 sq. ft. of rentable space. Article 5(c) of the lease further provided in part:
Lessor shall cause the parking area and other areas common to all tenants of Lessor to be constructed contemporaneously with the construction of the leased premises, and upon date of commencement Lessor shall have provided parking area of not less than three (3) square feet at ground level for each square foot of gross floor area contained in the buildings located in the shopping center, or as shown on the plot plan, Exhibit "A" attached hereto.
In October 1984, the Mississippi State Highway Commission commenced eminent domain proceedings for the purpose of acquiring a portion of the Premises in connection with the widening of U.S. Highway 49. On April 12, 1985, the Special Court of Eminent Domain entered a judgment compensating Yazoo Properties for the taking of a portion of the Premises. Portions of the parking lot were taken in fee and certain portions through a temporary construction easement. It was undisputed that after the eminent domain proceedings, the shopping center did not provide the requisite number of parking spaces.[2]
By letter dated April 18, 1985, K & B notified Yazoo Properties of K & B's intention to reduce its rental payment for the leased Premises from $4500.00 per month to *431 $2250.00 per month in accordance with the provisions of Article 20(b) of the lease claiming that the taking by the State had reduced K & B's available parking area to a level below that provided for in the lease.
K & B claimed that the taking by the State resulted in violation of the covenants set out in the above provisions and therefore constituted an event of default pursuant to Article 20(b) of the lease. Following notice to Yazoo Properties, K & B paid rent in the sum of $2,250.00 monthly as provided for in Article 20(b). The said reduced payment was maintained from April 18, 1985 without incident until Yazoo Properties filed this action in May 1989.

DISCUSSION OF THE LAW

Standard of Review for Summary Judgment
We employ a de novo standard of review in reviewing a lower court's grant of a summary judgment motion. Short v. Columbus Rubber & Gasket Co., Inc., 535 So.2d 61, 63 (1988). A motion for summary judgment lies only when there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. Miss. R.Civ.P. 56(c). To avoid summary judgment, the nonmoving party must establish a genuine issue of material fact by means allowable under Rule 56(c). Lyle v. Mladinich, 584 So.2d 397, 398 (Miss. 1991). The analysis of contract terms often lends itself to summary judgments and judicial efficiency. Such is the case at hand.
A motion for summary judgment should be denied unless the trial court finds, beyond any reasonable doubt, that the plaintiff would be unable to prove any facts to support his claim. McFadden v. State, 580 So.2d 1210 (Miss. 1991). "[T]he Court cannot try issues of fact on a Rule 56 motion; it may only determine whether there are issues to be tried." Brown v. Credit Center Inc., 444 So.2d 358, 362 (Miss. 1983). In the case sub judice there are no issues to be tried, only contract terms to be applied.

THE CIRCUIT COURT ERRED IN GRANTING DEFENDANT K & B'S MOTION FOR SUMMARY JUDGMENT BASED UPON ITS FINDINGS THAT SUBSEQUENT TO CONDEMNATION OF A PORTION OF THE PREMISES LEASED BY DEFENDANTS, DEFENDANTS WERE ENTITLED TO RESORT TO CERTAIN REMEDIES FOUND IN THE LEASE OTHER THAN THOSE SPECIFICALLY SET OUT IN THE PORTION OF THE LEASE DEALING SPECIFICALLY WITH EMINENT DOMAIN.
The Court must decide whether or not it was proper for K & B to pay one-half rent under Article 20(b) of the Lease or whether Article 18 of the Lease controlled and precluded K & B from using the remedies under Article 20(b). Article 20(b) of the Lease states:
In addition, and without in any way waiving, limiting, or restricting Lessee's other remedies or options herein contained, in the event of a violation of or the failure of Lessor or anyone else to observe the terms of Article 2, Article 3, Article 15, or Article 16 hereof, the monthly basic rental set forth in Article 6(a)(1) hereof and the percent of additional rental set forth in Article 6(a)(2) hereof, shall be payable at half of the stipulated amounts therein stated unless Lessor cures any such violation or failure to observe the said provisions which reduction shall be considered as liquidated damages for the period during which any such violation may have existed.
Yazoo Properties argued that this portion of the lease did not govern when the breach of the lease was caused by eminent domain proceedings. Yazoo Properties argued that in the event of eminent domain proceedings whereby all or a portion of the premises was taken, the rights and obligations of the parties to the lease were to be governed specifically and exclusively by the provisions of Article 18 of the lease, entitled "Eminent Domain." Article 18 reads:
In the event 20% or more of the parking or service areas is taken under the power of eminent domain, or if Lessee is substantially affected if less than 20% is taken, *432 Lessor shall give Lessee written notice thereof and Lessee shall have the option, to be exercised within sixty days after receipt of such written notice, to cancel this lease and declare the same null and void.
Yazoo Properties submitted that this Court should apply the doctrine of ejusdem generis, the notion that specific language controls over general inconsistent language in a contract, to find that Article 18 applied exclusively to the situation sub judice. Yazoo Properties contended that Article 18 deals specifically with the rights of the parties in the event of eminent domain proceedings and must control over the other general provisions dealing with defaults based upon voluntary acts of the landlord or, alternatively, that Article 18 at least created an exception to the more general rights and duties of the parties specified elsewhere in the lease.
K & B answered that Yazoo Properties had represented to the court of eminent domain, K & B, and at least one other tenant that Yazoo Properties was in the process of providing additional parking spaces in compliance with the Lease. Further, Yazoo Properties made a totally voluntary decision in pocketing the proceeds awarded it by the court of eminent domain and refusing to provide substitute parking after assuring K & B that it would do so. Therefore, we cannot agree with the characterization by Yazoo Properties that the taking of the parking spaces left Yazoo Properties without any power to correct the lack of parking spaces assured by the contract.
K & B could rely on Article 20(b) of the lease to support its reduction of rental payments. K & B is correct in its argument that the plain and unambiguous language of the Lease indicated that, irrespective of all other remedies in the Lease, K & B had the right to pay half rent if the parking spaces required by the Lease were not provided.

CONCLUSION
The doctrine of ejusdem generis only applies when the contract is found to be ambiguous. Cole v. McDonald, 236 Miss. 168, 109 So.2d 628 (1959) (holding that ejusdem generis was not applicable when intention of parties was clear). In Williams v. Batson, the Court stated that "(t)he principal that specific provisions control over general provisions (can) ... be invoked only when necessary to make clear that which is doubtful." Williams v. Batson, 186 Miss. 248, 187 So. 236, 239 (1939) (emphasis added).
We find that the intent was clear and unambiguous. Therefore, we will not apply the doctrine of ejusdem generis to the case sub judice. We additionally decline to review whether Article 20(b) is more or less specific than Article 18. That point is irrelevant. Courts cannot alter an unambiguous contract. Employer's Mutual Casualty Company v. Nosser, 250 Miss. 542, 164 So.2d 426 (1964). A plain reading of this contract taken as a whole does not imply that Article 18 was to be applied to the exclusion of all other remedies.[3] This Court has stated that where a contract is plain and unambiguous, summary judgment is appropriate. Willis v. Mississippi Farm Bureau Mut. Ins. Co., 481 So.2d 256 (Miss. 1985). Yazoo Properties failed to provide the spaces as required by the contract's terms. Furthermore, Yazoo Properties failed to follow through on its representation that it would provide more parking spaces in order to comply with the Lease. Therefore, we conclude that K & B had the right pursuant to Article 20(b) to reduce the rent by half.
JUDGMENT IS AFFIRMED.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, BANKS, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
DAN M. LEE, P.J., dissents with separate written opinion joined by McRAE, J.
DAN M. LEE, Presiding Justice, dissenting:
In this appeal from the lower court's grant of summary judgment, Katz & Besthoff Number 284, Inc. ("K & B"), was not, and is not, entitled to judgment as a matter of law. The lower court erred in determining *433 which contractual provision of the contract was controlling, and also erred by failing to rule that the contract was ambiguous under the lower court's own interpretation, thereby raising issues of fact, precluding summary judgment.
Therefore, I respectfully dissent from the majority's affirmance of the lower court's grant of summary judgment to K & B.

I.
Yazoo Properties, an Ohio General Partnership ("Yazoo Properties"), was the lessor of retail space and parking lot spaces to K & B, the lessee. In April of 1977, the parties entered into an agreement for the lease of commercial space and parking spaces in Yazoo Properties' parking lot  a contract. On April 12, 1985, the Mississippi State Highway Department took a portion of Yazoo Properties' parking lot through eminent domain proceedings. It is undisputed that, subsequent to the eminent domain proceedings, the contractually required number of parking spaces was not available for use by K & B. At issue in the summary judgment proceeding below, and including within this Court's review, is a determination of which provision of the contract is controlling and avails K & B a remedy for the loss of availability of parking spaces.
On review, this Court conducts a de novo review of a lower court's decision to grant summary judgment. W.B. Crain v. Cleveland Lodge 1532, Order of Moose, Inc., 641 So.2d 1186, 1188-89 (Miss. 1994); Daniels v. GNB, Inc., 629 So.2d 595, 599 (Miss. 1993); Short v. Columbus Rubber & Gasket Co., 535 So.2d 61, 63 (Miss. 1988). Summary judgment is appropriate only if no genuine issue of fact exists, and the moving parties is entitled to judgment as a matter of law. Owen v. Pringle, 621 So.2d 668 (Miss. 1993); Cunningham v. Lanier, 589 So.2d 133 (Miss. 1991).
In the case sub judice, we are concerned with the interpretation of a contract. Here, two separate provisions which, inter alia, provide remedies to K & B for the failure by Yazoo Properties to provide the requisite number of parking spaces for K & B, are under consideration. Those two provisions each alter the contractual rights and obligations of the parties, but in differing manners.
The two conflicting provisions of the lease are Article 18 and Article 20(b). Article 18 provides a specific remedy in the event that the requisite parking area is rendered inadequate for K & B as the result of a taking through eminent domain proceedings. It reads as follows:
In the event 20% or more of the parking or service areas is taken under the power of eminent domain, or if lessee is substantially affected if less than 20% is taken, Lessor shall give Lessee written notice thereof and Lessee shall have the opinion, to be exercised within sixty days after receipt of such written notice, to cancel this lease and declare the same null and void.
(emphasis added).
The other provision under consideration, Article 20(b), provides a different remedy to K & B for a general failure by Yazoo Properties to fulfill its obligations under the contract. It contains the following language:

In addition, and without in any way waiving, limiting, or restricting Lessee's other remedies or options herein contained, in the event of a violation of or the failure of Lessor or anyone else to observe the terms of Article 2, Article 3, Article 15, or Article 16 hereof, the monthly basic rental set forth in Article 6(a)(1) hereof and the percent of additional rental set forth in Article 6(a)(2) hereof, shall be payable at half of the stipulated amounts therein stated unless Lessor cures any such violation or failure to observe the said provisions which reduction shall be considered as liquidated damages for the period during which any such violation may have existed.
(emphasis added).
On April 12, 1985, The Special Court of Eminent Domain entered a judgment compensating Yazoo Properties for a taking of a portion of the parking lot at issue. Thereafter, by letter dated April 18, 1985, K & B notified Yazoo Properties that it intended to reduce its monthly rental payment from *434 $4,500.00 to $2,250.00, a one-half (1/2) reduction in the rental payment, in accordance with the provisions of Article 20(b) of the lease. K & B paid the reduced rental rate of $2,250.00 per month from that time until May of 1989, when Yazoo Properties commenced this action.

II.
Although principles of estoppel may have application in the case sub judice, that is not the question before this Court, nor was it the question before the lower court. The narrow issue before us is whether summary judgment was properly granted in a situation where the terms of the contract provide differing remedies for the same breach. "Generally speaking, we take a dim view of the practice of resolving contract ambiguities via summary judgment." Shaw v. Burchfield, 481 So.2d 247, 252 (Miss. 1985) (citing Dennis v. Searle, 457 So.2d 941 (Miss. 1984); Biggers v. Fox, 456 So.2d 761 (Miss. 1984)).
Nevertheless, contracts should be interpreted according to their specific terms and conditions. Krebs By and Through Krebs v. Strange, 419 So.2d 178 (Miss. 1982). See also Key Life Ins. Co. of S.C. v. Tharp, 179 So.2d 555, 253 Miss. 774 (1965). It is elementary that since Article 18 specifically addresses a taking of the parking area through eminent domain, under the plain language of the terms of that provision, the cancellation of the lease was a proper remedy available to K & B for the reduction in its available parking spaces.
Article 20(b) has relevance because it requires that other terms of the lease be observed. One of those enumerated provisions required to be observed by Article 20(b) is Article 16, which requires Yazoo Properties to maintain the parking lot pursuant to a plat of the parking area. Hence, a failure to maintain the parking lot in accordance with the Article 16 plat, even if caused by a taking through eminent domain proceedings, could possibly be construed as a breach of Article 20(b), as well as a breach of Article 18. But, a contract should be read as a whole, giving meaning and effect to each provision in a manner which harmonizes with the other terms of the contract. Brown v. Hartford Ins. Co., 606 So.2d 122 (Miss. 1992); Hewitt v. Frazier, 219 So.2d 149 (Miss. 1969). See also Texaco v. Kennedy, 271 So.2d 450 (Miss. 1973).
As evidenced by its April 18, 1985, letter notifying Yazoo Properties that it intended to pay only $2,250.00 per month, one-half (1/2) of the monthly rental rate to which it was contractually obligated, K & B contends that Article 20(b) controlled its remedy for the loss of parking spaces occasioned by the eminent domain taking, not the plain language of Article 128 which specifically addresses the remedy available in the event of a taking by eminent domain. As a consequence, according to the interpretation of the majority of this Court, the lower court, and K & B, the contract provided two remedies to K & B in the event it was not provided the amount of parking area for which it contracted with Yazoo Properties. Under that interpretation, K & B could: 1) cancel the lease pursuant to the plain language of Article 18; or 2) pay reduced rent at the rate of one-half (1/2) the contract rate ($2,250.00) under the authority of Article 20(b). Instead of interpreting its right of remedy under the plain language of Article 18, K & B contends that the more nebulous construction of the language of Article 20(b) provides them the correct relief.
One clear remedy for a breach of the contract resulting from a taking of the parking area by eminent domain is provided by the specific language of Article 18. A second remedy for the same breach is interpreted by the majority under the general language of Article 20(b). But, each remedy modifies the rights and obligations of the parties differently, in an inconsistent manner.
It is a longstanding rule of contract construction that specific terms of a contract qualify the meaning of general provisions where an inconsistency exists when it is necessary to clarify doubtful provisions. Garrett v. Hart, 168 So.2d 497, 250 Miss. 822 (1964); Williams v. Batson, 187 So. 236, 186 Miss. 248 (1939). Therefore, Article 18, which specifically addresses the remedy available to K & B if a taking of the parking area occurred by virtue of eminent domain, controls the general remedy made available *435 through the language of Article 20(b). As a consequence, the lower court's determination that Article 20(b) controlled was erroneous, and the lower court's grant of summary judgment in favor of K & B was inappropriate.
It is readily apparent, that under the majority's rationale and the plain language of the contract, two conflicting provisions could provide a remedy for K & B for the breach of contract at issue, Article 18 or Article 20(b). As we have said before, with regard to conflicting terms, "[i]f one of two conflicting clauses in a contract seems dominant, that clause should be enforced." Lamb Const. Co. v. Town of Renova, 573 So.2d 1378, 1383 (Miss. 1990) (citing Nicholas Acoustics & Specialty Co. v. H & M Construction Co., 695 F.2d 839, 843 (5th Cir.1983)); See also Miller v. Magnolia Building & Loan Ass'n, 134 So. 136, 160 Miss. 367 (1931). Article 18 is obviously the more dominant clause, specifically addressing the situation which occurred, a taking of the parking area by eminent domain. At best, it is doubtful as to which clause is the dominant one, causing the contract to be declared ambiguous.
Regardless of which provision of the contract correctly controls the remedy for K & B, the lower court's grant of summary judgment was improper for yet another reason. The lower court interpreted the existence of more than one remedy available to K & B for a breach of contract occasioned by the same event  a taking of the parking area through eminent domain. That interpretation renders Article 18 in direct conflict with Article 20(b), and imports inconsistency and ambiguity into the correct interpretation and application of a remedy, after a breach caused by a taking of the parking area through eminent domain.
If the terms of a contract are deemed ambiguous or uncertain, questions of fact are implicated which should be determined by the trier of fact, and summary judgment is improper. American Legion Ladnier Post No. 42, Inc. v. City of Ocean Springs, 562 So.2d 103 (Miss. 1990). See also Spartan Food Systems, Inc. v. American Nat. Ins. Co., 582 So.2d 399 (Miss. 1991).

III.
The majority fails to recognize the consequences attendant to their interpretation of Article 20(b)  importation of a conflict with the application of the plain language remedy provided by Article 18 for a taking of the parking area by eminent domain proceedings, and consequential ambiguity. But, the majority goes further astray of our established precedent, implying that the general provisions of a contract control the specific provisions. I would reverse the lower court's grant of summary judgment.
Accordingly, I respectfully dissent.
McRAE, J., joins this opinion.
NOTES
[1] Katz & Besthoff # 284, Inc. was merged into K & B Mississippi Corporation who is now the real party in interest.
[2] Yazoo Properties stated that there were 155 spaces at the shopping center subsequent to the eminent domain proceedings while K & B stated that there were 141. K & B stated that even assuming Yazoo Properties figure was correct for the purposes of summary judgment, the shopping center was still short 65 spaces of the required number.
[3] Mississippi Power & Light v. United Gas Pipeline, 760 F.2d 618, 622 (5th Cir.1985) (stating that under Mississippi law, words of contract are to be give their ordinary meaning).